# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-2198
_____

Owners Insurance Company

*Plaintiff - Appellee*

v.

Betty Lu Hughes

*Defendant - Appellant*

-------------------------------

Owners Insurance Company

*Defendants - Appellees*

v.

Betty Lu Hughes

*Plaintiff - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 17, 2013
Filed: April 3, 2013

_____

Before WOLLMAN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Betty Lu Hughes appeals the district court's[1] grant of summary judgment declaring that defendant Owners Insurance Company ("Owners") is not obligated to cover her claim for damages caused by an underinsured motorist. For the reasons stated below, we affirm.

Hughes was a passenger in a vehicle driven by Lilburn Mash when she was injured in a collision with another vehicle. Hughes's medical treatment costs exceeded $200,000. After collecting from Mash's vehicle liability insurance up to its bodily injury limit of $100,000 per person, Hughes sought additional coverage under an "underinsured motorist" provision in her own insurance policy issued by Owners. Owners sued for a declaration that it owed no coverage on each of two alternative grounds: (1) Mash's insurance coverage did not satisfy the Owners policy definition of "underinsured," and (2) even if Mash qualified as "underinsured," the Owners policy set-off provision reduced the amount available under the Owners policy to zero in light of the $100,000 Hughes received from Mash's policy. After the parties submitted a stipulation of facts and cross-moved for summary judgment, the district court granted summary judgment to Owners on each of the two alternative grounds.

We review a grant of summary judgment *de novo*, viewing the facts and making reasonable inferences in the light most favorable to the nonmoving party.

_____

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

-2-

*Merriam v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 572 F.3d 579, 583 (8th Cir. 2009). In this diversity action, "we are bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law." *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005). "Decisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule, but we are not bound to follow these decisions." *Aerotronics, Inc. v. Pneumo Abex Corp.*, 62 F.3d 1053, 1068 (8th Cir. 1995).

The relevant provisions of the Owners policy "underinsured motorist" coverage provision are as follows:

2. COVERAGE

* * *

b. If the first named insured in the Declarations is an individual, this coverage is extended as follows:

(1) **We** will pay compensatory damages **you** are legally entitled to recover from the owner or operator of any **underinsured automobile** for **bodily injury you** sustain:

a. When **you** are not **occupying** an **automobile** that is covered by **SECTION II—LIABILITY COVERAGE** of the policy; or

b. When **occupying** an **automobile you** do not own which is not covered by **SECTION II—LIABILITY COVERAGE** of the policy.

Thus, if the vehicle satisfies the definition of "underinsured automobile," Owners must cover "compensatory damages [Hughes is] legally entitled to recover" from the driver. The Owners policy definition of "underinsured automobile" is as follows:

1. DEFINITIONS

* * *

b. Underinsured automobile means an **automobile** to which a **bodily injury** liability bond or liability insured policy applies at the time of the **occurrence**:

> (1) with limits of liability at least equal to or greater than the limits required by the Motor Vehicle Financial Responsibility Law of Missouri; and

> (2) such limits of liability are less than those stated in the Declarations for Underinsured Motorist Coverage.

The limit required by Missouri law, as referenced in subsection (1), is $25,000. *See* Mo. Rev. Stat. § 303.190.2(2). The limit stated in the Declarations for the Owners policy, as referenced in subsection (2), is $100,000. Thus, an underinsured automobile is one with bodily injury liability coverage of at least $25,000 but less than $100,000. As stated above, Mash's liability insurance bodily injury limit was exactly $100,000, not "less than" $100,000. Therefore, by its plain language, the Owners policy definition of "underinsured automobile" would appear not to apply to Mash's vehicle, resulting in no coverage for Hughes's claim.

Hughes argues that the plain language of the policy's definition of "underinsured" cannot be given effect because, if it were, the promised $100,000 limit of liability for underinsured motorist coverage would never be available to the insured.[2] "[I]f a contract promises something at one point and takes it away at

---

[2]The policy provisions alleged to create the ambiguity are as follows:

4. LIMIT OF LIABILITY

-4-

another, there is an ambiguity . . . [and if] policy language is ambiguous, it must be construed against the insurer." *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. banc 2009) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). Like the district court, we recognize a Missouri Supreme Court decision

---

a. Subject to the limits of liability stated in the Declarations for Underinsured Motorist Coverage, **our** limit of liability shall not exceed the lowest of:

(1) The amount by which the Underinsured Motorist Coverage limits stated in the Declarations exceed the total limits of all **bodily injury** liability bonds and liability insurance policies available to the owner or operator of the **underinsured automobile**; or

(2) The amount by which compensatory damages for **bodily injury** exceed the total limits of such **bodily injury** liability bonds an[d] liability insurance policies.

\* \* \*

d. If the Limits of Liability stated in the Declarations for Underinsured Motorist Coverage are equal to or greater than two times the limits for **bodily injury** pursuant to the Missouri Vehicle Financial Responsibility Law, **our** payment for Underinsured Motorist Coverage shall be reduced by any amounts paid or payable for the same **bodily injury**:

\* \* \*

(3) by or on behalf of any person or organization who may be legally responsible for the **bodily injury**.

Because an underinsured vehicle by definition has at least $25,000 of coverage, section 4.a(1) guarantees that the $100,000 limit stated in the Declarations will be reduced by at least $25,000 for every covered claim.

that is directly on point. In *Rodriguez v. General Accident Insurance Co. of America*, 808 S.W.2d 379 (Mo. banc 1991), involving a policy with a similar definition of an underinsured automobile, the appellant likewise argued that an ambiguity existed because "an insured would never reach the limits of liability set out" for underinsured vehicles on the declarations page. *Id.* at 382. The Missouri Supreme Court rejected that argument and applied the definition of "underinsured" automobile as written:

> The contract between General Accident and the Rodriguezes clearly states that an underinsured motor vehicle is a vehicle whose limits for bodily injury liability are "less than the limit of liability for this coverage." By their own admission, the Rodriguezes acknowledge that Fruehwirth's liability insurance coverage was $50,000. Since Fruehwirth's coverage is equal to the limit of liability under the Rodriguezes' policy, Fruehwirth was not an underinsured motorist as defined by the Rodriguezes' policy.

*Id.*

Hughes contends that this aspect of *Rodriguez* has been declared to be dicta in a footnote of a more recent Missouri case. *See Jones*, 287 S.W.3d at 692 n.3 ("[T]here was no underinsurance in [*Rodriguez*], and its subsequent discussion of how to interpret underinsured motorist coverage was mere dicta."). However, the "subsequent discussion" in *Rodriguez* merely involved a set-off provision that would have applied had the definition for an "underinsured" motor vehicle been satisfied. *See Rodriguez*, 808 S.W.2d at 382 ("A set-off provision of the Rodriguezes' policy reinforces this definition of underinsured motorist."). By noting the nature of that subsequent discussion as dicta, the footnote in *Jones* actually confirms that the operative holding of *Rodriguez* is "[t]here was no underinsurance." *Jones*, 287 S.W.3d at 692 n.3. In other words, because the unambiguous definition of "underinsured motor vehicle" was not satisfied, the coverage did not apply regardless of potential ambiguities in the description of the *amount* of underinsured coverage.

At oral argument, Hughes directed us to another recent case from the Supreme Court of Missouri, *Manner v. Schiermeier*, No. SC92408, 2013 WL 85606 (Mo. Jan. 8, 2013), to support her argument that *Rodriguez* is no longer controlling. In *Manner*, as here, the plaintiff was injured by a vehicle and collected the $100,000 limit of liability from a policy covering that vehicle. 2013 WL 85606, at * 1. However, *Manner* differs from the instant case in that the plaintiff had underinsured motor vehicle coverage under four separate insurance policies, each with a $100,000 limit of liability. *Id.* at *1-2. The four insurers argued that, because the four policies under which the plaintiff claimed coverage each defined "underinsured" as "less than" the policyholder's limit of liability, the tortfeasor's vehicle failed to meet the definition of "underinsured" under each of the four policies considered separately. *See id.* at *4. The court rejected this argument because the plaintiff's four policies permitted "stacking" of their limits of liability, resulting in a definition of "underinsured" as having a limit less than $400,000. *See id.* at *5 ("[T]he coverage provided by the policies is their stacked amount, not the amount each would provide if considered separately, and it is the stacked amount that must be compared against the insurance coverage of the tortfeasor."). Thus, in *Manner*, the vehicle that caused the injury satisfied the definition of "underinsured" under the four "stacked" policies. Here, in contrast, Hughes is making a claim under a single policy, and the policy definition of "underinsured motor vehicle" is not satisfied, just as in *Rodriguez*. Nothing in the holding of *Manner* indicates that *Rodriguez* does not still apply in cases where the definition of "underinsured motor vehicle" is not satisfied.

Finally, Hughes also submitted a letter under Rule 28(j) of the Federal Rules of Appellate Procedure directing us to *Miller v. Ho Kun Yun*, No. WD74890, 2013 WL 427355 (Mo. Ct. App. Feb. 5, 2013), issued after the instant case was submitted. In *Miller*, the Missouri Court of Appeals held that language in the set-off and coverage provisions of an underinsured motor vehicle endorsement rendered a policy ambiguous despite the fact that an unambiguous definition of "underinsured motor vehicle," read in isolation, was not satisfied. 2013 WL 427355 at *11-12. The court

noted that *Rodriguez* did not end the inquiry because "[s]ubsequent decisions have made clear that the fact that a definition is clear and unambiguous does not end the inquiry as to the existence of an ambiguity until the court has reviewed the 'whole policy' to determine whether there is contradictory language that would cause confusion and ambiguity in the mind of the average policy holder." *Id.* at *5. We agree, of course, that if other policy provisions inject ambiguity into the meaning of what is a covered "underinsured motor vehicle," then *Rodriguez* would not compel a finding of no coverage. However, the policy language in the instant case is substantively identical to the policy language that was held to be unambiguous by the Missouri Supreme Court in *Rodriguez*.[3] In contrast, the *Miller* court relied on a lack

---

[3]The policy at issue in *Rodriguez* stated:

INSURING AGREEMENT

A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury;"

* * *

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

LIMIT OF LIABILITY

A. The limit of liability shown in the schedule for this coverage is our maximum limit of liability for all damages resulting from any one accident. . . .

* * *

of evidence in the record as to whether the defined policy term "underinsured motor vehicle" was presented in bold type so as to notify the ordinary reader of its technical meaning. 2013 WL 427355, at *1 n.1, *12. No similar ambiguity has been identified in the instant case. In any event, to the extent that *Miller* conflicts with *Rodriguez*, we are bound to follow *Rodriguez*, an on-point decision of the state supreme court, rather than *Miller*, the decision of a state court of appeals. *See Aerotronics*, 62 F.3d at 1068.

In short, the Owners policy's underinsured motorist coverage does not cover Hughes's claim because Mash's liability insurance bodily injury limit was not "less than" $100,000 as required by the policy's unambiguous definition of "underinsured automobile." We need not reach the alternative argument that, even if Mash's vehicle was "underinsured," the Owners policy set-off provision reduced the amount available under the Owners policy to zero.

For the foregoing reasons, we affirm the grant of summary judgment to Owners.

———————————————————

However, the limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.

*Rodriguez*, 808 S.W.2d at 381.