# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1979

_____

Lisa Burger

*Plaintiff - Appellant*

v.

Allied Property and Casualty Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 12, 2016
Filed: May 16, 2016

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Lisa Burger sued her insurer, Allied Property and Casualty Insurance Company ("Allied"), after it refused to pay a claim she submitted under her policy's

underinsured motorist ("UIM") endorsement. The district court[1] granted summary judgment in favor of Allied. We affirm.

I.

In December 2012, Burger was injured in a car accident caused by a negligent driver. The tortfeasor driver's insurer settled Burger's claim for $100,000.00, the limit of that driver's policy. Because Burger's damages exceeded this sum, she sought additional coverage under the UIM endorsement in her own insurance policy issued by Allied. Allied denied her claim, and Burger sued Allied in state court for vexatious refusal to pay. Allied removed the action to federal court. Allied then moved for summary judgment, contending that the tortfeasor's car was not an underinsured motor vehicle and that Allied thus properly denied Burger's claim. The district court agreed and granted summary judgment in favor of Allied. Burger now appeals.

II.

When, as here, federal jurisdiction is based on diversity of citizenship, "[s]tate law governs the interpretation of insurance policies." *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012). The parties agree that Missouri provides the governing law. Because Missouri law controls, "we are bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law." *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005). "Decisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule, but we are not bound to follow these decisions." *Aerotronics, Inc. v. Pneumo Abex Corp.*, 62 F.3d 1053, 1068 (8th Cir. 1995).

---

[1]The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri.

The district court granted summary judgment for Allied because it found that Burger's claim was excluded from coverage under the plain terms of Allied's UIM endorsement. We review the court's grant of summary judgment *de novo*. *Phelps-Roper v. Koster*, 815 F.3d 393, 397 (8th Cir. 2016). "A grant of summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Macklin v. FMC Transp., Inc.*, 815 F.3d 425, 427 (8th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

On appeal, Burger contends that summary judgment was improper because Allied's policy was ambiguous as to the scope and applicability of UIM coverage. Under Missouri law, "[w]hether an insurance policy is ambiguous is a question of law." *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. 2008) (alteration in original) (quoting *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007)). Ambiguity exists if the terms are "reasonably open to different constructions." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (quoting *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. 1997)). If the language in an insurance contract is unequivocal, however, the court must afford terms their plain meaning. *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 142 (Mo. 1980).

We begin our analysis with the text of the Allied policy. The UIM endorsement states:

> INSURING AGREEMENT
> A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":
>     1. Sustained by an "insured"; and
>     2. Caused by an accident.
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

The policy thus provides coverage if an insured is injured in a collision with an underinsured motor vehicle. The policy sets off the term "underinsured motor vehicle" in quotes. Later in the same section, the policy defines an underinsured motor vehicle as a land motor vehicle "to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage."

Whether the at-fault vehicle has "a limit for bodily injury [that] is less than the limit of liability" under Allied's UIM endorsement may be determined by consulting the endorsement's limit-of-liability section. This section states that the limit of liability is the limit "shown in the Declarations for each person for Underinsured Motorists Coverage." The declarations page, in turn, provides for $50,000 per person. Read together, then, these provisions indicate that Allied's policy promises UIM coverage only if the insured suffers bodily injury and the vehicle responsible for the accident has a limit of liability that is less than $50,000 per person.

The Missouri Supreme Court determined that a nearly identical UIM policy was unambiguous in *Rodriguez v. General Accident Insurance Company of America*, 808 S.W.2d 379 (Mo. 1991). The endorsement in *Rodriguez*, like the endorsement at issue here, stated that the insurer would pay damages that the insured was entitled to recover from the owner or operator of an underinsured motor vehicle. *Id.* at 381. The policy then defined "underinsured motor vehicle" using the same terms in Allied's policy: a land motor vehicle "to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this [UIM] coverage." *Id.* As in Allied's policy, the limit of liability for such coverage was $50,000. *Id.* at 380. Because the at-fault driver's policy provided coverage of $50,000, the Missouri Supreme Court determined that the tortfeasor's vehicle was not underinsured. *Id.* at 382. The court reached this conclusion after describing the definition of an underinsured motorist as

-4-

"clear." *Id.* The court further noted that it was "not permitted to create an ambiguity in order to distort the language of an unambiguous policy." *Id.*

Recently, our court relied on *Rodriguez* to find a very similar UIM provision unambiguous in *Owners Insurance Company v. Hughes*, 712 F.3d 392 (8th Cir. 2013). The Owners policy defined an "underinsured automobile" as one with a limit of liability at least equal to the limit required in Missouri but "less than those stated in the Declarations for Underinsured Motorist Coverage." *Id.* at 394. The declarations page, in turn, listed a limit of $100,000. *Id.* Because the at-fault driver's policy provided exactly $100,000 in coverage, our court concluded that the tortfeasor's car did not meet the policy's unambiguous definition of an underinsured automobile. *Id.* Based on the Missouri Supreme Court's decision in *Rodriguez*, we held that the policy provided no UIM coverage for the policy holder's claim. *Id.* at 395-96.

In line with these decisions, we conclude that the definition of a UIM in Allied's policy is unambiguous. Allied only owed coverage when the tortfeasor met the definition of a UIM by having a policy with a limit of liability that is less than $50,000. The driver who caused the accident that injured Burger had a $100,000 limit of liability, the sum for which Burger settled her claim. Under the plain terms of the policy, then, the other driver did not qualify as underinsured.

On appeal, Burger does not dispute that the tortfeasor failed to qualify under the definition of a UIM. Burger instead asks our court to reverse the grant of summary judgment because, she contends, other provisions in the policy render ambiguous the scope of Allied's UIM coverage. She argues that her case is distinguishable from *Rodriguez* because other terms in the Allied policy inject ambiguity into what qualifies as an underinsured vehicle. *See Seeck*, 212 S.W.3d at 133 (explaining that conflicts between UIM policy limits, policy definitions, and the provision of excess coverage in the "other insurance" clause may render an insurance

policy ambiguous).  For the reasons explained below, we find Burger's arguments unavailing.

Burger first directs our court to the Missouri Court of Appeals's decision in *Miller v. Ho Kun Yun*, 400 S.W.3d 779 (Mo. Ct. App. 2013).  In *Miller*, the court examined similar policy language and found that the policy was ambiguous as to the applicability and scope of UIM coverage.  *Id.* at 785-86, 793.  However, our court already has explained that *Miller* does not undermine the controlling authority of *Rodriguez* on the ambiguity issue, both because *Miller* is the decision of an intermediate state appellate court and because *Miller* "relied on a lack of evidence in the record as to whether the defined policy term 'underinsured motor vehicle' was presented in bold type so as to notify the ordinary reader of its technical meaning." *Hughes*, 712 F.3d at 396.  Here, Allied's policy—like the policy examined by the Missouri Supreme Court in *Rodriguez* and unlike the policy at issue in *Miller*—sets off the term "underinsured motor vehicle" in quotes.  *See Rodriguez*, 808 S.W.2d at 381.  And Allied, like the insurer in *Rodriguez*, expressly defined the term "underinsured motor vehicle" in another section of the UIM endorsement. Accordingly, no textual ambiguity exists sufficient to render this case more similar to *Miller* than *Rodriguez*.

Second, we see no merit to Burger's contention that the clarity of the UIM endorsement is undermined by the limit of liability for UIM coverage stated on the policy's declarations page.  Burger relies on *Fanning v. Progressive Northwest Insurance Co.*, 412 S.W.3d 360 (Mo. Ct. App. 2013), another intermediate appellate court decision, to argue that a policy's declarations page creates ambiguity as to limitations on coverage whenever the page does not explain those limitations.  We disagree.  Even if we were to consider *Fanning* as indicative of how the Missouri Supreme Court might rule, we find that the case is inapposite to the case before us. The policy at issue in *Fanning* explicitly defined the "declarations page" as the "document showing [the insured's] coverages, limits of liability, . . . and other policy-

related information." *Id.* at 365. As a consequence of this definition, the Missouri Court of Appeals held that the insurer had to include *all* applicable limitations of UIM coverage on the declarations page. *Id.* at 366. Because the insurer did not include all limitations, the policy was deemed to be ambiguous as to the scope of coverage. *Id.* at 365-66. Allied's policy, in contrast, provides no definition of the term "declarations page." Indeed, the reverse side of the declarations page states that several endorsements form part of the policy. In light of this distinction, we see no reason to find that Allied's declarations page renders ambiguous the otherwise clear limitations of UIM coverage. *See Naeger v. Farmers Ins. Co.*, 436 S.W.3d 654, 660 (Mo. Ct. App. 2014) (noting that *Fanning* "does not stand for the proposition that a policy's declarations page must notify an insured of limitations or exclusions to UIM coverage absent such a requirement by the policy itself"). Nothing here suggests that the declarations page provides anything other than a summary of the policy's essential terms. *See Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 & n.9 (Mo. 2014) (noting that "declarations are introductory and merely summarize the essential terms of the policy" and are subject to refinement and definition in the body of the policy).

We further reject Burger's attempts to show ambiguity based on the UIM endorsement's "other insurance" clause. Burger notes that Missouri courts have found ambiguity where a policy's "other insurance" clause suggests that UIM coverage is excess over any contributions from a tortfeasor. *See Seeck*, 212 S.W.3d at 133-34; *Zemelman v. Equity Mut. Ins. Co.*, 935 S.W.2d 673, 677-78 (Mo. Ct. App. 1996). However, the language at issue in those cases differed meaningfully from the policy language found here. When courts have found ambiguity, the policies indicated that UIM coverage was "excess over *any other insurance* available to the insured." *Seeck*, 212 S.W.3d at 132 (emphasis added); *see also Zemelman*, 935 S.W.2d at 675. This language created tension with the definition of a UIM—a definition that limited the insurer's duty to pay to situations in which the tortfeasor's liability limit fell below a certain sum. *See Seeck*, 212 S.W.3d at 132-33; *Zemelman*,

935 S.W.2d at 675. Allied's policy, in contrast, states that its UIM coverage is "excess over any other collectible *underinsured motorist insurance* providing coverage." The clause is thus "appropriately limited in that it is addressed only to the possibility of other applicable UIM coverage under other policies." *See Miller*, 400 S.W.3d at 786-87 (rejecting the plaintiff's claim of ambiguity based on a similar "other insurance" clause). Such language does not suggest that Allied always will cover damages over and above the contributions of a tortfeasor's insurer. The clause therefore does not contradict the policy's plain definition of a UIM.

Burger's final ambiguity argument focuses on the limit-of-liability provision. Burger argues that this provision renders the extent of UIM coverage ambiguous because the policy first states that Allied will contribute $50,000 and then later indicates that it will pay *only* the difference between that $50,000 figure and the amount of money contributed by an underinsured tortfeasor. *See Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. 2009) ("[I]f a contract promises something at one point and takes it away at another, there is an ambiguity." (quoting *Seeck*, 212 S.W.3d at 133)). This argument misses the mark. Even if the policy did contain inconsistent statements about the amount of coverage due once coverage has been triggered, such inconsistency would be immaterial to the question at issue here: whether the policy provides for coverage at all. As we explained in *Hughes*, disputes about the *amount* Allied must contribute simply do not "inject ambiguity into the meaning of *what* is a covered 'underinsured motor vehicle'" so as to render the UIM definition unclear. 712 F.3d at 396 (emphasis added). Nothing in Allied's UIM limit-of-liability section undermines the requirement that a tortfeasor's vehicle first must qualify as underinsured in order to trigger UIM coverage.

Moreover, Burger's limit-of-liability argument misconstrues Allied's policy. Allied does not reduce the UIM limit of liability by the tortfeasor's payments. Instead, Allied's policy states that these payments will be credited against the insured's *total compensable damages*. Allied suggests that it still would have to pay

the $50,000 limit of liability if: (1) the tortfeasor had coverage for some amount below Allied's $50,000 limit of liability, and (2) the total damages suffered by the insured met or exceeded the sum of the tortfeasor's contribution plus the Allied policy limit of liability. Thus, for example, if an insured's total damages amounted to $100,000, and the tortfeasor's insurance covered only $25,000, the tortfeasor would qualify as a UIM. The tortfeasor's $25,000 contribution would be credited against the $100,000 damages, but a balance of $75,000 would remain, and Allied would owe $50,000 to its insured in UIM coverage. As a result, Burger is mistaken in her contention that Allied's $50,000 limit for UIM coverage is illusory and therefore ambiguous.[2]

Finally, we see no merit to Burger's argument that the coverage provided in Allied's UIM endorsement is so contrary to the general understanding of underinsured motorist coverage that it triggers the reasonable-expectations doctrine, a "rule provid[ing] [that] the objective reasonable expectations of adherents and beneficiaries to insurance contracts will be honored even though a thorough study of the policy provisions would have negated these expectations." *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 697 (Mo. 1982). Burger's contention that this doctrine undermines the clear text of Allied's policy runs squarely into the Missouri Supreme Court's holding in *Rodriguez*, 808 S.W.2d at 383. There, the Missouri Supreme Court refused to apply the doctrine, noting that it comes into play only when the policy language is ambiguous. *Id.* at 382. The court determined that ambiguity did not exist in the *Rodriguez* policy because the policy "clearly state[d] that an underinsured motor vehicle is a vehicle whose limits for bodily injury liability are

[2]To the extent the Missouri Court of Appeals reached a contrary conclusion when examining a policy similar to Allied's in *Nationwide Insurance Co. of America v. Thomas*, No. ED 102829, 2016 WL 231495, at *4 (Mo. Ct. App. Jan. 19, 2016), we note that we are bound not by this decision of a state intermediate appellate court but by *Rodriguez*, an on-point decision of the state supreme court. *See Aerotronics*, 62 F.3d at 1068.

-9-

'less than the limit of liability for [the UIM] coverage.'" *Id.* As discussed above, the *Rodriguez* court examined language nearly identical to that found in the policy at issue here. Burger has failed to distinguish her case. Accordingly, we reject Burger's contention rooted in the reasonable-expectations doctrine.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment for Allied.

_____