# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-2723
_____

AMCO Insurance Company

*Plaintiff - Appellee*

v.

Judith Williams; Robert Williams

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: February 7, 2017
Filed: March 16, 2017

_____

Before SMITH[1], BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Kelly D. Williams died when her car was hit by Dylan A. Meyer's vehicle. After settling with Meyer's insurance company, Appellants Judith and Robert Williams—Kelly's parents and sole survivors—submitted a claim for underinsured

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

motorist (UIM) coverage. AMCO Insurance Company sued, seeking a declaration of no coverage under Kelly's auto policy. Both parties moved for summary judgment. The district court[2] granted AMCO's motion. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Meyer's insurance had a limit of $250,000, all paid to the Williamses. Because the damages exceed this amount, the Williamses sought $100,000 in UIM coverage under Williams' auto policy with AMCO.

The policy's Declarations page lists a UIM limit of $100,000 per person and $300,000 per accident. The Underinsured Motorists Coverage–Missouri Endorsement says:

**UNDERINSURED MOTORISTS COVERAGE**
**INSURING AGREEMENT**
A.    We will pay compensatory damages which an "insured" is legally entitled to recover *from the owner or operator of an "underinsured motor vehicle"* because of "bodily injury":
    1.    Sustained by an "insured"; and
    2.    Caused by an accident.
    The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

\* \* \* \*

C.    "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy

---

[2]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

-2-

applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage. . . .
(emphasis added).

The "Limit of Liability" section in the same Endorsement says:

**LIMIT OF LIABILITY**

A.    The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1.    "Insureds";
2.    Claims made;
3.    Vehicles shown in the Declarations; or
4.    Vehicles involved in the accident. A vehicle and attached "trailer" are considered one vehicle. Therefore the Limit of Liability will not be increased for an accident involving a vehicle which has an attached "trailer".

\* \* \* \*

D.    We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

E.    Any amount otherwise payable for damages under this coverage shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

-3-

The Williamses moved for summary judgment, arguing the policy is ambiguous and provides UIM coverage. AMCO cross-moved, asserting no coverage because Meyer's vehicle was not an "underinsured motor vehicle." Relying on the Missouri Supreme Court's decision in *Rodriguez v. General Accident Insurance Company*, 808 S.W.2d 379 (Mo. banc 1991), the district court granted summary judgment for AMCO.

"This court reviews de novo a grant of summary judgment, viewing the record most favorably to the nonmoving party and drawing all reasonable inferences for that party." **Munroe v. Cont'l W. Ins. Co.**, 735 F.3d 783, 786 (8th Cir. 2013), *citing* **Chambers v. Pennycook**, 641 F.3d 898, 904 (8th Cir. 2011). "Interpretation of an insurance policy is a matter of state law." **Progressive N. Ins. Co. v. McDonough**, 608 F.3d 388, 390 (8th Cir. 2010), *quoting* **Stan Koch & Sons Trucking, Inc. v. Great W. Cas. Co.**, 517 F.3d 1032, 1039 (8th Cir. 2008). The parties agree Missouri law applies. This court is "bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law." **Owners Ins. Co. v. Hughes**, 712 F.3d 392, 393 (8th Cir. 2013), *quoting* **Bockelman v. MCI Worldcom, Inc.**, 403 F.3d 528, 531 (8th Cir. 2005).

II.

The Williamses argue the policy is ambiguous and must be construed in their favor. "Under Missouri law, courts apply the general rules of contract construction when interpreting an insurance policy." **Munroe**, 735 F.3d at 786, *citing* **Todd v. Missouri United Sch. Ins. Council**, 223 S.W.3d 156, 160 (Mo. banc 2007). "The key is whether the [policy] language is ambiguous or unambiguous." **Peters v. Emp'rs Mut. Cas. Co.**, 853 S.W.2d 300, 302 (Mo. banc 1993). "If the policy is unambiguous, it will be enforced as written, absent statutory or policy considerations." **Munroe**,

735 F.3d at 786, *citing **Rodriguez***, 808 S.W.2d at 382. "If ambiguity exists, the court interprets the policy in favor of the insured." ***Id.***, *citing **Todd***, 223 S.W.3d at 160.

"An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." ***Burns v. Smith***, 303 S.W.3d 505, 509 (Mo. banc 2010), *quoting **Seeck v. Geico Gen. Ins. Co.***, 212 S.W.3d 129, 132 (Mo. banc 2007). "[C]onstruing the terms of an insurance policy," courts should apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." ***Id.***, *quoting Seeck*, 212 S.W.3d at 132. "Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole." ***Ritchie v. Allied Prop. & Cas. Ins. Co.***, 307 S.W.3d 132, 135 (Mo. banc 2009). Courts "must endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." ***Dibben v. Shelter Ins. Co.***, 261 S.W.3d 553, 556 (Mo. App. 2008).

This case is controlled by *Rodriquez v. General Accident Insurance Company of America*, 808 S.W.2d 379 (Mo. banc 1991). There, the tortfeasor's vehicle had a $50,000 liability policy. ***Id.*** at 380. After collecting the $50,000, the insured sought the balance of damages under her policy's UIM coverage which had a $50,000 limit per vehicle. ***Id.*** The company declined, emphasizing the policy's definition of "underinsured motor vehicle." ***Id.*** at 381. The insured sued, claiming the policy was ambiguous and must be construed in favor of coverage. ***Id.***

The court rejected the insured's arguments, finding the "contract between [the company] and the [insured] clearly states that an underinsured motor vehicle is a vehicle whose limits for bodily injury liability are 'less than the limit of liability for this coverage.'" ***Id.*** at 382. The court held, "Since [the tortfeasor's] coverage is equal to the limit of liability under the [insured's] policy, [the tortfeasor] was not an underinsured motorist as defined by the [] policy." ***Id.***

The definition of "underinsured motor vehicle" in *Rodriguez* is identical to the definition here. The same analysis applies. Williams' policy provides that "[AMCO] will pay compensatory damages which the 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury.'" The issue is whether Meyer's vehicle was an "underinsured motor vehicle." The policy defines "underinsured motor vehicle" as:

> [A] land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but *its limit for bodily injury liability is less than the limit of liability for this coverage*.

(emphasis added). The policy "clearly states that an underinsured motor vehicle is a vehicle whose limits for bodily injury liability are 'less than the limit of liability for this coverage.'" *Id.* at 382. It is undisputed that Meyer's bodily-injury liability limit is $250,000, and the policy's UIM liability limit is $100,000. Because the bodily-injury liability limit for Meyer's vehicle is *greater than* the policy's UIM liability limit, Meyer's vehicle is not an "underinsured motor vehicle." *Id*. *See Hughes*, 712 F.3d at 396 (relying on *Rodriguez* and finding no UIM coverage because the tortfeasor's vehicle was not an "underinsured automobile").

III.

The Williamses argue *Rodriquez* is inapplicable because the policy is ambiguous. They contend the definition of "underinsured motor vehicle" conflicts with the Declarations page, Insuring Agreement section, Limit of Liability section, and Other Insurance clause.

-6-

## A.

The Williamses think that the definition of "underinsured motor vehicle" conflicts with the Declarations page, which lists a UIM limit of liability of $100,000 but has no other limitations or exclusions. This reads the Declarations page in isolation, contrary to Missouri law requiring courts to interpret policies "as a whole," *Ritchie*, 307 S.W.3d at 135 and "avoid an interpretation that renders some provisions useless or redundant." *Dibben*, 261 S.W.3d at 556. "The essential terms [of a policy] are usually stated in abbreviated form on a declarations page." *Todd*, 223 S.W.3d at 160. The district court properly found no ambiguity between the Declarations page, which states "in abbreviated form" the UIM limit, and the UIM Endorsement which limits coverage to cases where the tortfeasor's bodily-injury liability limit is less than the UIM liability limit. *See Hughes*, 712 F.3d at 396 (relying on *Rodriguez* to enforce a definition of "underinsured automobile" despite the policy's Declarations page that provided $100,000 in UIM coverage).

## B.

The Williamses claim the definition of "underinsured motor vehicle" conflicts with the Insuring Agreement section by ignoring the promise to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury.'" Like the Declarations argument, this claim fails to read the policy as a whole, ignoring other policy language that limits UIM coverage. *See Ritchie*, 307 S.W.3d at 135; *Dibben*, 261 S.W.3d at 556.

## C.

The Williamses assert that the policy's Limit of Liability section creates an ambiguity because its "set-off" provisions make the UIM coverage illusory.

However, the two Missouri Supreme Court cases they invoke are inapposite. *See Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687 (Mo. banc 2009); *Ritchie*, 307 S.W.3d 132. In *Jones*, it was undisputed that the tortfeasor's vehicle was an underinsured motor vehicle. *Ritchie* did not involve the definition of "underinsured motor vehicle," thus, neither case considered the issue here.

This court has considered and rejected this argument:

> Burger argues that [the limit-of-liability] provision renders the extent of UIM coverage ambiguous because the policy first states that Allied will contribute $50,000 and then later indicates that it will pay only the difference between that $50,000 figure and the amount of money contributed by an underinsured tortfeasor. *See Jones v. Mid–Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. 2009) ("[I]f a contract promises something at one point and takes it away at another, there is an ambiguity." (quoting *Seeck*, 212 S.W.3d at 133)). This argument misses the mark. Even if the policy did contain inconsistent statements about the amount of coverage due once coverage has been triggered, such inconsistency would be immaterial to the question at issue here: whether the policy provides for coverage at all. As we explained in *Hughes*, disputes about the amount Allied must contribute simply do not "inject ambiguity into the meaning of what is a covered 'underinsured motor vehicle'" so as to render the UIM definition unclear. 712 F.3d at 396 (emphasis added). *Nothing in Allied's UIM limit-of-liability section undermines the requirement that a tortfeasor's vehicle first must qualify as underinsured in order to trigger UIM coverage.*

*Burger v. Allied Prop. & Cas. Ins. Co.*, 822 F.3d 445, 450 (8th Cir. 2016) (emphasis added).

Although *Rodriguez* did not address this precise issue, the court examined ambiguity arguments about the set-off provision—"the limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or

organizations who may be legally responsible." ***Rodriguez***, 808 S.W.2d at 381. The provision, the court stated, reinforced, rather than made ambiguous, the definition of "underinsured motor vehicle:"

> The effect of this provision is to set-off the $50,000 paid by [the tortfeasor's] insurer against the $50,000 coverage provided by the [insureds' company]. The underinsured motorist coverage, therefore, is not excess coverage as the [insureds] argue. Instead, that coverage provides a total amount of protection to be paid to the [insureds] if other persons legally responsible for [the] injuries have lesser liability limits than those provided under the [insureds'] underinsured motorist coverage.

***Id.*** at 382.

Here, the set-off provision—"[a]ny amount otherwise payable for damages under this coverage shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible"—also reinforces that UIM coverage is not "excess coverage" but rather provides protection if other persons legally responsible have lesser liability limits.

The set-off provision does not render the policy ambiguous.

## D.

The Williamses claim the definition of "underinsured motor vehicle" creates an ambiguity by contradicting the Other Insurance clause. The Williamses did not raise this argument in the district court. This court will not consider it on appeal. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."); *Smith v. City of Des Moines, Iowa*, 99 F.3d 1466, 1473 (8th Cir. 1996)

("We will not reverse a grant of summary judgment on the basis of an argument not presented below.").

## IV.

The Williamses attempt to discredit *Rodriguez*, stating, "Numerous cases since *Rodriguez* have considered policies defining an 'underinsured motor vehicle' as one with liability limits less than the insured's UIM limits, yet because of ambiguities in the policies the insureds were entitled to collect the UIM coverage even though they had collected the same amount as or limits greater than the UIM coverage from the tortfeasor." Yet the cases they cite are all appellate decisions. Although "[d]ecisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule," this court is "not bound to follow these decisions." ***Burger***, 822 F.3d at 447, *quoting **Aerotronics, Inc. v. Pneumo Abex Corp.***, 62 F.3d 1053, 1068 (8th Cir. 1995). Rather, this court is "bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law." ***Hughes***, 710 F. 3d at 393.

The Williamses recognize *Rodriguez* "is the only Missouri Supreme Court case that directly addresses the definition of 'underinsured motor vehicle'" at issue here, and that "*Rodriguez* has not been overruled by the Supreme Court" despite "numerous opportunities to revisit" it. This court has relied on *Rodriguez* to find similar UIM provisions unambiguous. *See **Burger***, 822 F.3d 445; ***Hughes***, 712 F.3d 392. "Considering the clarity with which the underinsured motorist coverage is defined in the policy," the district court did not err in finding the policy "is neither ambiguous nor misleading." ***Rodriguez***, 808 S.W.2d at 383.

* * * * * * *

The judgment is affirmed.

_____

-10-