**Gail and Matias RODRIGUEZ, Appellants,**

v.

**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, Respondent.**

**No. 73222.**

Supreme Court of Missouri, En Banc.

May 3, 1991.

Carrie L. Kmoch, St. Louis, for appellants.

Eugene K. Buckley, John S. McCollough, St. Louis, for respondent.

ROBERTSON, Judge.

This case involves the underinsured motorist coverage of an automobile insurance contract. Appellants, Gail and Matias Rodriguez, appeal the entry of summary judgment in favor of the defendant, General Accident Insurance Company of America (General Accident), claiming that the underinsured motorist coverage of the insurance contract between the parties is ambiguous. Relying on that ambiguity, the Rodriguezes urge that this Court should apply an "objective reasonable expectation" standard to find that their underinsured motorist coverage is excess coverage and that they are entitled to the limits of that coverage irrespective of payments received from the tortfeasor. They also contend that they are entitled to stack the underinsured motorist coverage.

The Court of Appeals affirmed the trial court's judgment. We granted transfer to consider this case together with *Sisco v. American Family Mutual Insurance Co.*, 806 S.W.2d 409 (Mo. banc 1991). Mo. Const. art. V, sec. 10. We have jurisdiction. Following oral argument, we determined that the cases were significantly different and warranted separate consideration. The judgment of the trial court is affirmed.

### I.

On September 11, 1987, appellant Gail Rodriguez received injuries when the vehicle she was driving collided with a vehicle operated by John Fruehwirth. Fruehwirth's insurance company paid Rodriguez $50,000, the limits of liability of Fruehwirth's insurance policy. Rodriguez sought the balance of her damages from her insurance carrier, General Accident, under the policy's "underinsured motorist coverage."

The face sheet of the policy in question shows various coverages for two automobiles including underinsured motorist coverage with a limit of $50,000 on each vehicle. The face sheet also reveals that General Accident did not charge an additional premium for the underinsured motorist coverage. The salient provisions of the

Underinsured Motorist Coverage Endorsement are as follows:

### Underinsured Motorist Coverage
### INSURING AGREEMENT

A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury;"

1. Sustained by an "insured";

\* \* \* \* \* \*

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

\* \* \* \* \* \*

### LIMIT OF LIABILITY

A. The limit of liability shown in the schedule for this coverage is our maximum limit of liability for all damages resulting from any one accident. *This is the most we will pay regardless of the number of:*

1. "Insureds";
2. Claims made;
3. *Vehicles or premiums shown in the Declarations;* or
4. Vehicles involved in the accident

*However, the limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.* This includes all sums paid under part A of this policy. (Emphasis added).

General Accident declined to pay citing the contractual language. The Rodriguezes brought this action seeking both to recover under the uninsured motorist coverage and to have their underinsured motorist coverage stacked, thereby claiming a total of $100,000 in underinsured motorist coverage. General Accident filed a motion for summary judgment. The trial court sustained the motion holding that Fruehwirth was not an "underinsured motorist"

under the insurance contract. This appeal followed.

### II.

Summary judgment is an extreme, drastic remedy and may be employed only where there are no genuine issues of fact and where the moving party is entitled to judgment as a matter of law. *Elliott v. Harris,* 423 S.W.2d 831, 835 (Mo. banc 1968). On review, this Court examines the record in the light most favorable to the party against whom judgment was rendered. *Gast v. Ebert,* 739 S.W.2d 545, 546 (Mo. banc 1987). The Rodriguezes admit that Fruehwirth was covered by a policy of insurance with $50,000 limits and that they have recovered $50,000 from Fruehwirth's insurer. With this admission any factual dispute in this case evaporates. As there are no issues of fact unresolved, the propriety of the trial court's order sustaining General Accident's motion for summary judgment turns solely upon questions of law.

### A.

The Rodriguezes argue that their insurance contract with General Accident is ambiguous and that they are entitled to a resolution of the ambiguity consistent with their objective reasonable expectations, citing *Estrin Construction Co., Inc. v. Aetna Casualty & Surety Co.,* 612 S.W.2d 413 (Mo.App.1981). Their argument leads them to conclude that application of the objective reasonable expectations doctrine renders the underinsured motorist coverage as excess coverage and that they are entitled to their policy limit, $50,000, in coverage beyond that which Fruehwirth's insurer previously paid.

▪ In *Robin v. Blue Cross Hospital Service, Inc.,* 637 S.W.2d 695, 697 (Mo. banc 1982), this Court described the objective reasonable expectations doctrine as a "rule provid[ing] the objective reasonable expectations of adherents and beneficiaries to insurance contracts will be honored even though a thorough study of the policy provisions would have negated these expectations." In that case, however, this Court

found no need to consider the merits of the doctrine, determining that the insurance contract in question there was not a contract of adhesion. Without a contract of adhesion, the objective reasonable expectations doctrine does not apply. Thus, this Court has not determined the viability of the objective reasonable expectations doctrine in Missouri.

Even were we to assume for the sake of argument that the contract in question here is a contract of adhesion, the Rodriguezes' argument for the application of the objective reasonable expectation doctrine depends on the presence of an ambiguity in the contract language.

■ An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract. *Nixon v. Life Investors Insurance Co.*, 675 S.W.2d 676, 679 (Mo.App.1984). If there is a conflict between a technical definition within a contract, and the meaning which would reasonably be understood by the average lay person, a lay person's definition will be applied unless it plainly appears that the technical meaning is intended. *Robin*, 637 S.W.2d at 698; *Greer v. Zurich Insurance Co.*, 441 S.W.2d 15, 27 (Mo.1969). A court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate. *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.*, 594 S.W.2d 950, 954 (Mo.App. 1980). Thus, where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. *Hempen v. State Farm Mutual Automobile Insurance Co.*, 687 S.W.2d 894, 894 (Mo. banc 1985).

■ The contract between General Accident and the Rodriguezes clearly states that an underinsured motor vehicle is a vehicle whose limits for bodily injury liability are "less than the limit of liability for this coverage." By their own admission, the Rodriguezes acknowledge that Fruehwirth's liability insurance coverage was $50,000. Since Fruehwirth's coverage is equal to the limit of liability under the Rodriguezes' policy, Fruehwirth was not an underinsured motorist as defined by the Rodriguezes' policy.

■ A set-off provision of the Rodriguezes' policy reinforces this definition of underinsured motorist. The contract provides that "the limit of liabilty shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." The effect of this provision is to set-off the $50,000 paid by Fruehwirth's insurer against the $50,000 coverage provided by the respondent. The underinsured motorist coverage, therefore, is not excess coverage as the Rodriguezes' argue. Instead, that coverage provides a total amount of protection to be paid to the Rodriguezes if other persons legally responsible for Mrs. Rodriguez' injuries have lesser liability limits than those provided under the Rodriguezes' underinsured motorist coverage.

Despite the insurance contract's clear language, the Rodriguezes are not dissuaded. They contend that the term "underinsured motorist" is inherently ambiguous and that the effect of the plain language is to render the provision meaningless. In support of this contention, the Rodriguezes cite *Weber v. American Family Mutual Insurance Co.*, 868 F.2d 286 (8th Cir.1989). There, unaided by any reference to Missouri law, the Eighth Circuit reckoned that an insured would never reach the limits of liability set out in an underinsured motorist coverage unless dealing with an uninsured motorist. *Weber* thus held that the underinsured motorist coverage was "meaningless or, at least, misleading." *Id.* at 288.[1]

---

**1.** *Weber* reasoned that if the insured is protected by $50,000 in underinsured motorist coverage, and that coverage was not construed to be excess to amounts paid by the tortfeasor's insurer, then the insured could never get the full $50,000 worth of coverage. That is, if the tortfeasor's insurer paid $25,000, then the insured would be paid $25,000 on her underinsured motorist coverage; and if the tortfeasor's insurer paid one dollar then the insured would receive $49,999 from her own coverage. Never could the insured recover the full $50,000 in underinsured

Rejecting the plain language of the insurance contract before it, *Weber* held that the underinsured motorist coverage was excess coverage above payments from other sources.

*Weber* is an example of a court creating an ambiguity in order to distort the language of an unambiguous policy. *Weber* is not binding on this Court. Indeed, having considered the issue, we reject the holding in *Weber* as inconsistent with Missouri law.

Considering the clarity with which the underinsured motorist coverage is defined in the policy, we hold that it is neither ambiguous nor misleading. There is no basis for application of an objective reasonable expectation doctrine to this contract. The Rodriguezes' first point is denied.

### B.

The Rodriguezes also contend that they should be permitted to stack the underinsured motorist coverage of each of their two vehicles insured by the General Accident policy thereby yielding a combined limit of $100,000. Under this argument, the Rodriguezes would still be able to recover $50,000 from General Accident. This is because, they argue, the combination of the two policies yields total coverage which exceeds Fruehwirth's liability limits thus rendering Fruehwirth's coverage less than the limit of liability under the Rodriguezes' stacked coverage. Fruehwirth becomes an underinsured motorist under the Rodriguezes' policy's definition, they conclude.

We repeat here the contract language applicable to the stacking issue.

The limit of liability shown in the schedule for this coverage is the maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of ... [v]ehicles or premiums shown in the Declarations.

In *Noll v. Shelter Insurance Co.,* 774 S.W.2d 147, 151 (Mo. banc 1989), this Court determined that in the absence of public policy considerations, an insured and an insurer are free to define and limit coverage by their agreement. There are no statutory requirements in Missouri for underinsured motorist coverage. Therefore, the existence of the coverage and its ability to be stacked are determined by the contract entered between the insured and the insurer.

We are aware of the decisions of the court of appeals permitting stacking of the underinsured motorist coverage. See *Bergholdt v. Farmers Insurance Co.,* 691 S.W.2d 357 (Mo.App.1985); *Maxon v. Farmers Insurance Co.,* 791 S.W.2d 437 (Mo.App.1990), and *Tegtmeyer v. Snellen,* 791 S.W.2d 737 (Mo.App.1990). Each of these cases involves Farmers Insurance Company's policies which treated uninsured and underinsured coverage as identical. "The Farmer's language here lumps the proverbial apples and oranges and calls this class apples." *Maxon,* 791 S.W.2d at 438–39. The courts reasoned that the public policy which invalidates anti-stacking provisions of uninsured motorist coverage, *Cameron Mutual Insurance Co. v. Madden,* 533 S.W.2d 538 (Mo. banc 1976), is equally applicable to underinsured motorist coverage.

That reasoning is inapposite here. This is because: first, General Accident does not treat underinsured coverage as though it were uninsured coverage and second, no public policy mandating underinsured motorist coverage exists in Missouri. Therefore, there is no predicate for a court overruling the clear language of the policy.

The language of the anti-stacking provisions of the policy in question here is clear and unambiguous. In the absence of ambiguity and in the absence of public policy

---

motorist benefits. If the tortfeasor had no coverage then the insured would recover under her uninsured motorist provision. Any construction of the provision which prevented recovery of the full $50,000, declared *Weber,* rendered the coverage meaningless.

It is difficult to understand why the mathematical inability to collect a full $50,000 in underinsured motorist coverage renders the coverage meaningless. The effect of underinsured motorist coverage is to assure the appellant of receiving $50,000, the contracted amount of protection.

requirements mandating underinsured motorist coverage, the clear language of the contract prevails. The Rodriguezes' second point is denied.

## III.

The judgment of the trial court is affirmed.

BLACKMAR, C.J., RENDLEN, HIGGINS, COVINGTON and HOLSTEIN, JJ., and FLANIGAN, Special Judge, concur.

BILLINGS, J., not sitting.