James G. KYTE, Respondent,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant.

No. WD 60321.

Missouri Court of Appeals, Western District.

Dec. 10, 2002.

---

Rodney A. Ames, Kansas City, for appellant.

James T. Thompson, Kansas City, for respondent.

Before LISA WHITE HARDWICK, P.J., NEWTON and HOLLIGER, JJ.

LISA WHITE HARDWICK, Judge.

This case involves the interpretation of an automobile insurance policy which provided $250,000 in underinsured motorist (UIM) coverage to James Kyte. When the insurer, American Family Mutual Insurance Company, paid Kyte $150,000 and refused to pay the full policy limits on a UIM claim, Kyte sued for breach of contract. The circuit court granted summary judgment in Kyte's favor and ordered American Family to pay Kyte an additional $100,000 to cover the policy limit. On appeal, American Family claims Kyte was not entitled to full payment because the UIM policy permitted a set-off for $100,000 in other insurance payments Kyte received. We find the circuit court failed to properly apply the set-off provision and, therefore, reverse and remand.

## Factual and Procedural History

The facts underlying this appeal are undisputed. On October 28, 1997, Kyte was injured in an automobile accident for which Jasper Mirabile admitted fault. Mirabile entered into a settlement with Kyte and stipulated to damages of $250,000. Mirabile's liability insurer, General Casualty Company of Wisconsin, agreed to pay Kyte its policy limit of $100,000.

Kyte was insured by American Family at the time of the accident. His policy included an endorsement for UIM coverage up to $250,000. Based on Mirabile's stipulation to $250,000 in damages, Kyte demanded payment of the full UIM policy limit from American Family. American Family paid Kyte $150,000, claiming the UIM endorsement allowed a set-off for the $100,000 he received from General Casualty.

Kyte thereafter amended his settlement with Mirabile by increasing the stipulated damages to $350,000. Kyte again demanded that American Family pay the UIM policy limit. American Family refused, stating it was not obligated to pay any more than the $150,000 it had already paid Kyte.

Kyte sued American Family for breach of contract. The parties filed cross-motions for summary judgment on the sole issue of whether American Family was entitled to a set-off of $100,000 (which Kyte received from General Casualty) against the $250,000 UIM policy limits.

The trial court granted Kyte's motion for summary judgment and denied American Family's motion. The judgment ordered American Family to pay Kyte $100,000. The trial court did not provide findings of fact, conclusions of law, or otherwise state grounds for the judgment. American Family appeals.

## Issue on Appeal

At issue here is the interpretation of American Family's automobile insurance policy, which provided up to $250,000 in underinsured motorist coverage to Kyte. The policy's "Underinsured Motorist (UIM) Coverage Endorsement" specified that American Family would "pay under this coverage only after the limits of liability under any bodily injury liability bonds or policies have been exhausted by payments of judgments or settlements." The UIM endorsement further stated the "limits of liability for this coverage will be reduced by ... [a] payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle."

Based on the language of the endorsement, American Family contends Kyte's UIM claim is subject to the $250,000 policy limit and that any payment under the policy must be reduced by the $100,000 insurance payment Kyte received from Mirabile (through General Casualty) as the person legally responsible for Kyte's injuries. Applying this $100,000 set-off, Kyte was only entitled to receive the $150,000 American Family paid him on the UIM claim. American Family contends the circuit court erred in granting Kyte summary judgment because it did not properly apply the policy's set-off provision. American Family also contends summary judgment was improper because the UIM coverage cannot be considered "excess" insurance in light of the recent enactment of § 379.204 RSMo (2000).

Kyte responds that two provisions in the endorsement create ambiguity about the set-off and indicate the UIM coverage was in addition to "other insurance" paid. According to Kyte, the policy language: "We will pay under this coverage only after the limits of liability under any bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements[,]" is an excess insurance clause which, when read in conjunction with the UIM limits, can only mean that the American Family policy limits begin *after* payment by the tortfeasor's liability coverage.

Kyte also contends an ambiguity in the application of the set-off arises as a result of the "Other Insurance" clause in the UIM endorsement, which provided:

**OTHER INSURANCE**

If there is other similar insurance on a loss covered by this endorsement, **we** will pay **our** share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an **insured person** while **occupying** a vehicle **you** do not own is excess over any other similar insurance.

Kyte argues that the "similar insurance" referred to in the first sentence of this clause would be any insurance written to cover bodily injury, including the coverage afforded by General Casualty. With "similar insurance" in the amount of $100,000 from General Casualty and $250,000 from the American Family policy, Kyte asserts the total available insurance is $350,000 and American Family should be obligated to pay 71% of that amount. Kyte's interpretation of the "Other Insurance" clause would require American Family to pay $250,000 as its "proportion of the total limits of all similar insurance."

### Applicable Law and Analysis of Policy Language

On appeal from summary judgment, "[o]ur review is essentially *de novo.*" *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). This case was submitted on stipulated facts and involves the interpretation of an insurance contract, which is purely a question of law. *Green v. Federated Mut. Ins. Co.*, 13 S.W.3d 647, 648 (Mo.App. E.D.1999). Accordingly, we owe no deference to the trial court's determination of whether Kyte was entitled to summary judgment as a matter of law. *ITT*, 854 S.W.2d at 376.

The primary rule in interpretation of contracts is to determine the intent of the parties and give effect to that intent. *City of Harrisonville v. Public Water Supply Dist.* 49 S.W.3d 225, 230 (Mo.App. W.D.2001). We read the contract as a whole to ascertain the parties' intentions. *Id.* at 231. Where such intent is expressed in clear and unambiguous language, we will "not resort to construction" of the contract by examining evidence extrinsic to the contract itself. *Id.* at 230.

■ The fact that the parties disagree over the interpretation of terms in an insurance policy does not render the language ambiguous. *Sanders v. Wallace,* 884 S.W.2d 300, 302 (Mo.App. E.D.1994). An ambiguity arises where there is a duplicity, indistinctness, or uncertainty in the meaning of the words used in an insurance contract. *Rodriguez v. Gen. Accident Ins. Co. of Am.,* 808 S.W.2d 379, 382 (Mo.banc 1991). Where a conflict exists between a technical definition in a contract and the meaning which would be reasonably understood by the average layperson, the layperson's understanding will be applied unless it is clear the technical meaning is intended. *Id.* A court cannot distort the language of an insurance policy to create an ambiguity or to enforce a particular construction which it might deem more appropriate. *Id.* If a policy is unambiguous, it must be enforced as written, absent a statute or public policy requiring otherwise. *Id.*

■ Our interpretation of the American Family policy endorsement is guided by *Rodriguez,* wherein the Supreme Court found similar UIM limits of liability language unambiguous. *Id.* at 383. In *Rodriguez,* an insurance company refused to pay a claim on a $50,000 UIM policy limit because the insured had already received a $50,000 payment from the tortfeasor. *Id.* at 381. The Supreme Court agreed that the insurer was entitled to a "set-off" based on the following language in the UIM endorsement: "the limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." *Id.* at 382. The set-off provision in Kyte's American Family policy is virtually indistinguishable from the contract language found unambiguous in *Rodriguez.*

Kyte suggests *Rodriguez* is not dispositive because other provisions in his American Family policy conflict with the otherwise clear language of the set-off provision. Our review of these other provisions reveals no such conflict or ambiguity.

■ Kyte first argues the UIM coverage was excess insurance because the endorsement states: "We will pay under this coverage only after the limits of liability under any bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." Standing alone, this provision might seem to indicate that any UIM claims will be paid in addition to and after payments have been made under other liability policies. It is noteworthy, however, that this provision did not state American Family was obligated to pay the full policy limits after the insured receives payments from other insurance policies. In fact, a subsequent provision in the endorsement required the limits of liability for the UIM coverage to be "reduced" or set-off by the amounts paid under those other policies. Read together, these two provisions can be reasonably interpreted to mean that the UIM insurance will be paid after the limits of other liability policies have been paid, but the limits of the UIM coverage will be decreased by the total amount of payments from those other policies.

■ These two provisions are not inconsistent when read in the context of the endorsement as a whole. Proper interpretation requires that we seek to harmonize all provisions of the policy to avoid leaving some provisions without function or sense. *State ex rel. Mo. Highway & Transp. Comm'n v. Maryville Land P'ship,* 62 S.W.3d 485, 492 (Mo.App. E.D.2001). We must reject Kyte's "excess insurance" interpretation because it renders the endorsement's set-off provision meaningless.

■ Kyte also relies on the endorsement's "Other Insurance" clause to support his argument that the UIM coverage was excess insurance. This clause is irrelevant to Kyte's insurance claim for two reasons.

First, the "Other Insurance" clause stated: "If there is *other similar insurance* on a loss covered by this endorsement, we will pay our share according to this policy's proportion of the total limits of all similar insurance." (emphasis added) The phrase *other similar insurance* must be viewed in the context of the UIM endorsement in which it appears. The plain and unambiguous language refers to other UIM coverage, not any form of insurance as Kyte contends. *Lang v. Nationwide Mut. Fire Ins. Co.*, 970 S.W.2d 828, 832 (Mo.App. E.D.1998). We, therefore, interpret the clause to mean that if the insured has other UIM coverage under another policy, American Family will pay its proportionate share of the total policy limits of all such available insurance. Neither party contends that Kyte had any UIM coverage other than the American Family policy. Thus, the first sentence of the "Other Insurance" clause is not applicable to Kyte and does not create a conflict that renders the set-off provision unenforceable.

■ The second sentence of the "Other Insurance" clause stated: "But, any insurance provided under this endorsement for an insured person *while occupying a vehicle you do not own* is excess over any other similar insurance." (emphasis added). This excess insurance provision is inapplicable in this case because there is no evidence that Kyte was in a vehicle he did not own at the time of the accident. *Clark v. Am. Family Mut. Ins. Co.*, 2002 WL 31360587, *6 (Mo.App. E.D.). The record reflects that Kyte was driving his own vehicle, a 1996 Honda Civic insured by American Family, when he sustained injuries in the accident with Mirabile.

We find no ambiguity in the set-off provision, nor any conflict with other provisions of the UIM endorsement in Kyte's automobile insurance policy. The trial court failed to properly apply the plain language of the set-off provision and reduce American Family's obligation to pay the $250,000 UIM policy limits by the $100,000 payment Kyte received from Mirabile's insurer, General Casualty. In light of our holding that the excess insurance provision of the policy was not applicable to Kyte's UIM claim, we need not address American Family's additional argument regarding the proper application of excess provisions following a recent statutory enactment, § 379.204.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

All concur.