

# In the
# Missouri Court of Appeals
# Western District

ROBERT PRESTON, )
)
Appellant, )
)
v. ) **WD86801**
)
PROGRESSIVE DIRECT INSURANCE ) **OPINION FILED:**
COMPANY, ) **OCTOBER 29, 2024**
)
Respondent. )

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Charles H. McKenzie, Judge**

**Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding,**
**Mark D. Pfeiffer, Judge, Gary D. Witt, Judge**

Robert Preston appeals the circuit court's grant of summary judgment in favor of Progressive Direct Insurance Company and Progressive Advanced Insurance Company ("Progressive" collectively) on Preston's "Petition for Damages" against Progressive. Preston contends the circuit court erroneously applied the law to the uncontroverted facts in granting summary judgment to Progressive arguing that, 1) the uncontroverted facts demonstrate that Preston had $25,000 in underinsured motorist coverage, and 2) the underinsured motorist policy is illusory and ambiguous. We affirm.

**Factual and Procedural Background**

On July 19, 2021, Preston was walking in a grocery store parking lot when he was hit by a vehicle operated by a third-party driver. Preston sustained injuries to his left foot. The driver was insured by Allstate Insurance Company ("Allstate"), which tendered a policy limit offer of $50,000.00 to Preston to resolve any claims against its insured, with the understanding that all liens would be honored with either a Release of Lien or inclusion in the settlement.

Preston was in the course and scope of his employment when he was injured, and his injury was covered under Missouri workers' compensation laws. Preston's employer's workers' compensation carrier, CNA, paid $38,769.68 in benefits. Pursuant to Section 287.150(3),[1] CNA asserted a subrogation claim for right of recovery from Allstate for the workers' compensation benefits it paid Preston. Out of the $50,000.00 Allstate paid to settle Preston's claims against Allstate's insured, Preston received $33,333.33, and CNA recovered $16,666.67.[2] After fees and expenses, Preston claims that he received a net of $25,000.00.

---

[1]All statutory references are to the Revised Statutes of Missouri, as updated through 2020, unless otherwise noted.

[2]Preston states in his brief that Progressive set forth a Statement of Uncontroverted Fact alleging Preston received $33,333.33 from the Allstate payout (with the remainder going to his employer), stating that Progressive "apparently contributed the Appellant's employer's attorney fee and costs as something Plaintiff received." Consequently, Preston denied this Statement of Fact. Yet, in Preston's Petition at paragraph 16, Preston alleges that "Plaintiff and his employer agreed to divide the recovery so that Plaintiff received $33,333.33 and Plaintiff's employer received $16,666.67.

At the time of the injury, Preston was insured under a policy provided by Progressive (the "Policy"). The Policy included underinsured motorist coverage. Preston filed a claim for coverage with Progressive for the injuries he sustained on July 19, 2021, which was denied.

On September 20, 2022, Preston filed a "Petition for Damages" against Progressive wherein he alleged he had underinsured motorist coverage at the time of the July 19, 2021, injuries. Preston alleged that his employer paid workers' compensation benefits related to the injury, and that the employer had a right to bring a cause of action against the third-party driver to recover workers' compensation benefits paid. Preston alleged that the employer's cause of action against the third-party driver was separate and distinct from Preston's cause of action. Further, that under Missouri law, Preston and the employer are able to agree upon how any recovery from the third party may be divided among the employer and Preston. Preston averred that he and the employer collectively recovered a policy limit payment of $50,000.00 from the negligent third-party's insurance carrier, and agreed to divide the recovery so that Preston received $33,333.33 and the employer received $16,666.67.

Preston further alleged that the damages caused by the negligence of the third party are in excess of $100,000.00. Preston made an underinsured motorist claim with Progressive due to his damages allegedly being significantly greater than his recovery from the third-party driver. Preston alleged that Progressive interpreted the underinsured

3

motorist coverage policy limit to be $50,000.00, less any payment made by the liability carrier, and because the liability carrier paid $50,000.00, denied Preston's claim.

Preston alleged that the Policy's underinsured motorist per person policy limit is ambiguous and contrary to Missouri law because Preston's first-party underinsured policy limit benefits are reduced by a liability carrier payment made to an entity that is not a party to the insurance contract between Preston and Progressive. Preston contended that, because of the ambiguity and the Policy being contrary to Missouri law, the Policy limit setoff language could not apply to Preston's claim, and the wrongful denial of underinsured motorist benefits by Progressive constituted a breach of contract. Preston additionally alleged that the refusal was vexatious and without reasonable cause within the meaning of Section 375.296.

After discovery, both Preston and Progressive filed motions for summary judgment. Preston argued he was entitled to $25,000.00 in underinsured motorist benefits because he only received $25,000.00 from the liability policy. He also contended the Policy's definition and application of **"Underinsured motor vehicle"** is ambiguous and results in Preston paying for underinsured motorist benefits he could never receive.

Citing various provisions set forth in the Policy, Progressive argued that it denied coverage to Preston because the vehicle he was injured by on July 19, 2021, does not conform to the Policy definition of an underinsured motor vehicle. Progressive argued

4

that the Policy was not ambiguous, and the uncontroverted essential facts negated Preston's breach of contract claim, entitling Progressive to judgment as a matter of law.

The circuit court denied Preston's motion for summary judgment, and granted Progressive's. The court found the Progressive Policy clear and unambiguous. Further, while Preston has underinsured Motorist Coverage of $50,000.00, because he received a benefit of $50,000.00 from the third-party driver who allegedly caused the injury, Progressive had no duty to pay under the terms of the Policy. The court found that the third-party Allstate Insurance holder was not the operator of an underinsured motor vehicle as that term is defined in the Policy. Further, even assuming the Allstate insured vehicle was an underinsured vehicle, there was no available coverage because the Allstate policy awarded $50,000.00 of coverage to Preston. By reducing the limit of liability as stated in the declarations page for the Policy by the amount of $50,000.00, the result is $0 underinsured limit available.

This appeal follows.

## Standard of Review

The standard of review for an appeal challenging the grant of a motion for summary judgment is *de novo. Newton v. Mercy Clinic E. Cmtys.*, 596 S.W.3d 625, 628 (Mo. banc 2020). Accordingly, we do not defer to the trial court's decision, but instead use the same criteria the trial court should have employed in initially deciding whether to grant Progressive's motion. *Id.* We review the record in the light most favorable to the party against whom judgment was entered and accord that party the benefit of all

5

inferences which may reasonably be drawn from the record. *Id.* Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.*

> A 'defending party' may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense.

*Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.*, 155 S.W.3d 50, 58-59 (Mo. banc 2005).

"The interpretation of an insurance contract is a question of law and is given *de novo* review." *Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. banc 2017). "In construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance…." *Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 478 (Mo. banc 2018) (internal quotation marks and citation omitted). "Absent an ambiguity, an insurance policy must be enforced according to its terms." *Id.*

**Analysis**

Preston contends the circuit court erroneously applied the law to the uncontroverted facts in granting summary judgment to Progressive, arguing that, 1) the uncontroverted facts demonstrate that Preston had $25,000.00 in underinsured motorist

6

coverage (Point I), and 2) the underinsured motorist policy is illusory and ambiguous (Point II).

The Policy provisions relevant to this appeal are as follows. On the Auto Insurance Declarations Page under "**Outline of general policy coverages**" it states that **"All limits listed below are subject to all terms, conditions, exclusions and applicable reductions described in the policy." "Underinsured Motorist coverage section"** states:

> **\*Underinsured Motorist Limit – Each Person**
> Your Underinsured Motorist Limit – Each Person equals your "Each Person Dollar Amount" of $50,000 minus the total of all sums paid or payable from all bodily injury liability bonds or policies applicable at the time of the accident, including, but not limited to, all sums paid or payable under Part I – Liability to Others. (No coverage applies if this yields an outcome of zero or a negative number.)

Page sixteen of the Policy provides the insuring agreement for underinsured motorist coverage.

## PART III(B) – UNDERINSURED MOTORIST COVERAGE

## INSURING AGREEMENT

> Subject to the General Definitions, to all the terms, conditions, and limitations of Part VI—Duties in Case Of An Accident Or Loss, to all the terms, conditions, and limitations of Part VII—General Provisions, and to all the terms, conditions, and limitations and applicable reductions described in this Part III(B), if **you** pay the premium for this coverage and coverage under this Part III(B) applies, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:

7

1. sustained by that **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**.

As described on the **declarations page**, the total of all sums paid or payable from all bodily injury liability bonds or policies applicable at the time of the accident is used in determining the limit of liability for Underinsured Motorist Coverage. If any Underinsured Motorist Limit calculation described on the **declarations page** yields an outcome of zero or a negative number, coverage under this Part III(B) will not apply. Therefore, **we** will not make any payments under this Part III(B) until after:
1. the limits of liability under all bodily injury liability bonds and policies applicable at the time of the accident have been exhausted by payment of judgments or settlements; and
2. **we** have determined:
   a. that coverage applies under this Part III(B); and
   b. the limit of liability applicable under this Part III(B).

Any judgment or settlement for damages against an owner or operator of an **underinsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

"**Underinsured motor vehicle**" is defined on page seventeen for Part III(B), with

exclusions not listed here, as:

[A] land motor vehicle or trailer for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than whichever of the following is shown on the **declarations page** for Underinsured Motorist Coverage:
a.     the 'Each Person Dollar Amount' to be used in determining the 'Underinsured Motorist Limit—Each Person'; or
b.     the 'Single Dollar Amount' to be used in determining the 'Underinsured Motorist Limit—Combined Single Limit.'

Under **LIMITS OF LIABILITY** on page nineteen, the Policy provides in part:

The limit of liability described on the **declarations page** for Underinsured Motorist Coverage will be reduced by all sums:

1.  paid because of bodily injury by or on behalf of any persons or organizations that may be legally responsible from sources other than bodily injury liability bonds or policies;

…

3.  paid or payable because of bodily injury under any of the following or similar laws:
    a.  workers' compensation law; or
    b.  disability benefits law.

We first address Preston's claim that the Policy language is "illusory and ambiguous" so as to determine its enforceability.

> An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract. *Nixon v. Life Investors Insurance Co.,* 675 S.W.2d 676, 679 (Mo.App.1984). If there is a conflict between a technical definition within a contract, and the meaning which would reasonably be understood by the average lay person, a lay person's definition will be applied unless it plainly appears that the technical meaning is intended. *Robin,* 637 S.W.2d at 698; *Greer v. Zurich Insurance Co.,* 441 S.W.2d 15, 27 (Mo. 1969). A court is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate. *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.,* 594 S.W.2d 950, 954 (Mo.App.1980). Thus, where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. *Hempen v. State Farm Mutual Automobile Insurance Co.,* 687 S.W.2d 894, 894 (Mo. banc 1985).

*Rodriguez v. General Acc. Ins. Co. of America*, 808 S.W.2d 379, 382 (Mo. banc 1991).

Preston argues that the Policy language is "illusory and ambiguous because it promises a certain amount of underinsured motorist benefits, but takes away those benefits through the definition of an underinsured motor vehicle, regardless what the insured actually received from the underinsured motor vehicle carrier." He opines that, he received only $25,000.00 from the third-party liability insurer, so "a denial of

9

coverage means that the Progressive policy is ambiguous and illusory." He further contends the Policy "improperly relies on what the liable third-party 'paid' or what was 'payable' to separate parties from Appellant in denying coverage." He argues that, since under Section 287.150 his employer was subrogated to his own right to recovery against the third-party tortfeasor to recover workers' compensation benefits paid to Preston as a result of the injury (attorney fees also came out of the $50,000.00 paid by the alleged tortfeasor's insurance), he personally did not receive $50,000.00 and, therefore, the Policy is ambiguous. Further, that Progressive's reliance on what any party other than Preston was paid creates duplicity, indistinctness, or uncertainty in the meaning of the Policy. We disagree.

Nowhere does the Policy promise a certain amount of underinsured motorist benefits and then take them away. The declarations page states that the each person limit of liability is "$50,000 minus the total of all sums paid or payable from all bodily injury liability bonds or policies applicable at the time of the accident." The definition for "underinsured motor vehicle," as applicable here, is when the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the each person dollar amount shown on the declarations page for Underinsured Motorist Coverage.

The Policy makes no promise that $50,000.00 will be paid at all, stating on the declarations page that "no coverage applies" if, after deducting the total of all sums paid or payable from all bodily injury liability bonds or policies applicable at the time of the

accident from the base amount of $50,000.00, the resulting number is zero or less than zero. Thereafter, the Underinsured Motorist Coverage Insuring Agreement references the declarations page and reiterates that the total of all sums paid or payable from all bodily injury liability bonds or policies applicable at the time of the accident is used in determining the limits of liability for Underinsured Motorist Coverage. Further, that if any Underinsured Motorist Limit calculation described on the declarations page yields an outcome of zero or a negative number, Underinsured Motorist Coverage is inapplicable.

Similar language was found unambiguous by the Missouri Supreme Court in *Rodriguez v. General Acc. Ins. Co. of America*, 808 S.W.2d 379 (Mo. banc 1991). In *Rodriguez*, the appellants claimed the underinsured motorist coverage of the insurance contract was ambiguous. *Id.* at 380. The underinsured motorist coverage in that case defined an underinsured motor vehicle as a vehicle to which a bodily injury liability bond or policy applied at the time of the accident, but its limit for bodily injury liability was "less than the limit of liability for this coverage." *Id.* at 381. Under the "Limit of Liability" section of the policy, it stated that "the limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." *Id.* The appellants had $50,000 of underinsured motorist coverage, and the limits of liability for the insurance carried by the at-fault vehicle was $50,000. *Id.* at 380. The appellants received $50,000 from the at-fault vehicle's insurance carrier and was, consequently, denied underinsured motorist coverage due to

11

the contractual language. *Id.* The trial court sustained a motion for summary judgment filed by the appellants' underinsured motorist insurance carrier. *Id.*

On appeal, the appellants claimed the underinsured motorist language of the insurance contract was ambiguous and argued they were entitled to a resolution of the ambiguity consistent with their objective reasonable expectations. *Id.* at 381. The Missouri Supreme Court found the underinsured motorist language in the policy unambiguous:

> The contract between General Accident and the Rodriguezes clearly states that an underinsured motor vehicle is a vehicle whose limits for bodily injury liability are 'less than the limit of liability for this coverage.' By their own admission, the Rodriguezes acknowledge that Fruehwirth's liability insurance coverage was $50,000. Since Fruehwirth's coverage is equal to the limit of liability under the Rodriguezes' policy, Fruehwirth was not an underinsured motorist as defined by the Rodriguezes' policy.
>
> A set-off provision of the Rodriguezes' policy reinforces this definition of underinsured motorist. The contract provides that 'the limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.' The effect of this provision is to set-off the $50,000 paid by Fruehwirth's insurer against the $50,000 coverage provided by the respondent. The underinsured motorist coverage, therefore, is not excess coverage as the Rodriguezes' argue. Instead, that coverage provides a total amount of protection to be paid to the Rodriguezes if other persons legally responsible for Mrs. Rodriguez' injuries have lesser liability limits than those provided under the Rodriguezes' underinsured motorist coverage.

*Id.* at 382. The same is true with the Policy language here, and there is nothing ambiguous or misleading about the contract language in the Policy.

12

The Policy does not guarantee Preston cash in hand from an at-fault party's liability insurance carrier in order for reductions to the $50,000.00 base limit to apply. Regardless, the entire $50,000.00 recovery from Allstate is deemed to have been received by Preston even if the actual proceeds went elsewhere. "In a subrogation situation, the insured retains the legal right to their claim and the insurer cannot sue the tortfeasor directly but must wait and assert its subrogation interest against any recovery the insured makes against the tortfeasor." *Thomas v. Ramushi*, 674 S.W.3d 112, 116 (Mo. App. 2023) (internal quotation marks and citation omitted). Under Section 287.150.1, "Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee or to the dependents against such third person[.]" The employer, by statute, is essentially standing in the shoes of its employee to receive reimbursement for worker's compensation benefits paid to its employee from sums paid by a third party to compensate its employee for damages arising from the same injury-producing incident.

In the exhibits provided by Preston along with his motion for summary judgment, Preston included Exhibit D, a letter from Allstate to Preston's attorney wherein Allstate agreed "to tender the $50,000 policy limit to settle the bodily injury claim of Robert Preston." The letter further stated that, "It should be understood that all liens will be honored with either a Release of Lien or inclusion in the settlement after written verification has been provided to us." Preston's Exhibit E is a letter from the workers' compensation insurance carrier, CNA, to Allstate indicating that $38,769.68 was paid out

13

in workers' compensation benefits, with CNA agreeing with Preston to accept $16,666.67 of the $50,000.00 Allstate payout for CNA's subrogation lien. CNA further agreed to waive any right to future credits.

The circuit court did not err in granting Progressive's motion for summary judgment. The Policy is not ambiguous, and applied to the uncontroverted material facts in the case, Preston does not have $25,000.00 in underinsured motorist coverage available under the Policy. The Allstate Insurance holder was not the operator of an underinsured motor vehicle as that term is defined in the Policy. Further, even if the Allstate covered vehicle could be defined as such, the net limit of liability available under the Policy is calculated as affording no coverage because the Allstate policy awarded $50,000.00 coverage and payments to or on behalf of Preston. Preston's points on appeal are denied.

**Conclusion**

The circuit court's judgment is affirmed.

_____
Anthony Rex Gabbert, Chief Judge

All concur.

14