

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **LINDA MCCARTY,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | **WD87167** |
| **v.** | ) | |
| | ) | **OPINION FILED:** |
| | ) | **December 10, 2024** |
| **SHELTER MUTUAL INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Macon County, Missouri**
**The Honorable Frederick Tucker, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge,
Gary D. Witt and Thomas N. Chapman, Judges

Appellant Shelter Mutual Insurance Company ("Shelter") appeals from the

judgment entered by the Circuit Court of Macon County, Missouri ("circuit court"),

granting summary judgment in favor of Respondent Linda McCarty ("McCarty") and

against Shelter for underinsured motorist ("UIM") coverage benefits totaling $50,000.

Shelter argues the circuit court's judgment erroneously applied the law in interpreting the

subject insurance policy because McCarty was only entitled to $15,000 of UIM coverage

benefits under the insurance policy, not $50,000. We reverse and remand with directions.

## Facts and Procedural History

On July 16, 2021, McCarty's son was killed in a motor vehicle accident. McCarty pursued a liability claim against the at-fault driver ("tortfeasor") and settled for the tortfeasor's liability insurance policy limits of $35,000.

At the time of his death, McCarty's son qualified as an insured under an automobile insurance policy that McCarty purchased from Shelter ("the Policy"). The declarations page ("Declarations") pertaining to the Policy lists UIM Limits of "$50,000 Per Person" and "$100,000 Per Accident." McCarty asserted a UIM claim under the Policy, demanding a payment from Shelter Insurance for the full $50,000 UIM policy limit. In response, Shelter tendered $15,000, explaining that this was the total amount of UIM coverage available to McCarty under the terms of the Policy because McCarty had already received $35,000 from the settlement.

On February 11, 2022, McCarty filed a petition against Shelter in the circuit court, alleging Shelter breached the Policy by refusing to pay her $50,000 of UIM coverage benefits to satisfy her claim.[1] The parties proceeded to file cross-motions for summary judgment, seeking a determination from the circuit court on whether McCarty was owed $50,000 or $15,000 under the Policy's terms.

Citing various provisions in the Policy, Shelter argued that it was entitled to reduce, or set off, the tortfeasor's liability payment of $35,000 from the $50,000 UIM limit. McCarty argued that she was entitled to $50,000 because the Policy is ambiguous

---

[1] The petition also contained a claim for vexatious refusal to pay.

2

in that neither the Declarations nor the Underinsured Motorist Endorsement ("UIM Endorsement") describe a set-off provision pertaining to the UIM coverage limits under the Policy. She further argued that because of the ambiguities present in the Policy, the Policy should be construed as providing "excess" coverage rather than "gap" coverage.[2]

The circuit court granted McCarty's motion for summary judgment and denied Shelter's motion for summary judgment, finding that the Policy is ambiguous and that Shelter was not entitled to set off the tortfeasor's payment from the UIM Policy limit. Accordingly, the circuit court entered judgment against Shelter in the amount of $50,000. This appeal follows.

## Standard of Review

The standard of review for an appeal challenging the grant of summary judgment is *de novo*. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). Accordingly, we do not defer to the circuit court's decision but instead use the same criteria the circuit court should have employed in deciding whether to grant McCarty's motion (and, in this instance, deny Shelter's motion). *Newton v. Mercy Clinic E. Communities*, 596 S.W.3d 625, 628 (Mo. banc 2020). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.*

---

[2] In context, "excess coverage exists where . . . the insured's injuries exceed the coverage provided by the primary insurance on the occupied motor vehicle." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 131 (Mo. banc 2007). Gap coverage on the other hand is "coverage designed only to bring the insured to the same position the insured would have had if the tortfeasor's limits had equaled the insured's UIM coverage." *Miller v. Ho Kun Yun*, 400 S.W.3d 779, 787 (Mo. App. W.D. 2013).

The interpretation of an insurance policy is a question of law that we also review *de novo*. *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. banc 2009). In construing the terms of an insurance policy, the court applies the meaning that would be attached by an ordinary person of average understanding purchasing insurance. *Id.*

## Points on Appeal

Shelter asserts two points on appeal, contending that the circuit court erroneously granted summary judgment to McCarty and denied summary judgment to Shelter because the Policy unambiguously states that the UIM limit will be reduced by a tortfeasor's liability payments. For ease of analysis, we address these points together.

## Analysis

The subject of this case is the application of the Policy's provisions to the uncontested underlying facts. Shelter takes the position that the Policy language unambiguously entitles Shelter to a set-off to the UIM policy limit listed in the Declarations due to the $35,000 received by its insured from the tortfeasor's liability policy. McCarty takes the opposite position. She argues that the Policy language is ambiguous, and therefore should be construed as requiring Shelter to pay the full UIM policy limit in excess of the tortfeasor's payment.

"Language is ambiguous if it is reasonably open to different constructions." *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. banc 2017) (internal quotation marks omitted) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). "This Court will not 'create an ambiguity under the Policy language where none exists so as to construe the imaginary ambiguity in such a way to reach a result which

4

some might consider desirable but which is not otherwise permissible under the Policy or the law.'" *Id.* at 618 n. 4 (quoting *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 142 (Mo. banc 1980)). "Absent an ambiguity, an insurance Policy must be enforced according to its terms." *Seeck*, 212 S.W.3d at 132. But where an ambiguity is found, it is resolved in favor of the insured. *Id.*

The relevant provisions of the UIM Endorsement provide:[3]

Limits
$_____ Each Person $_____ Each Accident $_____
NOTE: these amounts will be reduced to the **applicable limit** by deducting the payments an **insured** received, or is legally entitled to receive under an enforceable settlement contract or judgment, from other sources (as stated in the definition of **applicable limit**).

This coverage is provided only if the endorsement number is shown in the **Declarations**. It is subject to all conditions, exclusions, and limitations, stated in this policy. As with all policy provisions, the words in bold print, and bolded words derived from those words, have their specifically defined meanings.

. . . .

**YOU** SHOULD PURCHASE THIS COVERAGE WITH LIMITS IN THE AMOUNT **YOU** WANT TO BE THE MINIMUM COMPENSATION FOR **BODILY INJURY** AVAILABLE FROM ALL SOURCES (INCLUDING THIS COVERAGE).

THIS IS SUPPLEMENTAL **BODILY INJURY** COVERAGE. THE **EACH PERSON LIMIT** AND **EACH ACCIDENT LIMIT** STATED ABOVE WILL BE REDUCED BY BOTH THE AMOUNT PAID TO AN **INSURED** ON BEHALF OF ALL **PERSONS** LEGALLY OBLIGATED TO THAT **INSURED**, AND BY THE AMOUNTS PAID TO THAT **INSURED** UNDER OTHER UNDERINSURED MOTORIST POLICIES.

---

[3] Throughout this opinion, we have recited the relevant provisions from the Policy. The words that are in bold print reflect the original emphasis from the Policy. However, the underlined words reflect additional emphasis that we have added to direct the reader of this opinion to words that are particularly relevant to our analysis today.

WHEN A **PERSON** WHO IS LEGALLY RESPONSIBLE TO AN **INSURED** FOR BODILY INJURY RESULTING FROM AN **AUTO ACCIDENT** IS COVERED BY LIABILITY INSURANCE OR OTHER **PAYMENT SOURCES,** BUT THE COMBINED AVAILABLE LIMITS FROM ALL THOSE SOURCES ARE INSUFFICIENT TO FULLY COMPENSATE THE INJURED **INSURED**, THIS COVERAGE WILL SUPPLEMENT THE PAYMENTS FROM THOSE **PAYMENT SOURCES** UP TO THE LIMITS YOU PURCHASED FOR THIS COVERAGE. BUT THE FULL AMOUNT OF THE LIMITS **YOU** PURCHASED WILL BE PAID ONLY WHEN ALL **PAYMENT SOURCES** WERE EXHAUSTED WITHOUT ANY PAYMENT TO AN **INSURED**.

The UIM Endorsement also contains the following definitions relevant to our analysis.

(1) **Applicable limit** means either (a) or (b), below, depending on the number of insureds who sustain **bodily injury** in the **accident** that gave rise to the **claim** under this coverage. It means:
   (a) The **each person limit** minus the total amount paid, or payable, to an insured by all payment sources, if only one insured sustains bodily injury; or

. . . .

(3) **Each person limit** is the amount shown on this endorsement and in the **Declarations** as such. It is the maximum monetary limit available for the **claim** of any one **insured**. All payments to others for **claims** based on the bodily injury of that insured, whether direct or derivative in nature, are included within that limit. The **each person limit** will be paid in full only if only if [sic] the **insured** received no payment from any **payment source** because those were exhausted in settling the claims of others.

. . . .

(7) **Payment source** means a liability bond, governmental tort liability fund, or liability insurance policy, obligated to provide monetary payment to an **insured** on behalf of a **person** liable for **damages**.

First, McCarty successfully argued to the circuit court that because the UIM limits are left blank at the top of the UIM endorsement, a reasonable person could think that the

6

"Each Person" limit referred to in the UIM Endorsement and the "Per Person" UIM limit listed in the Declarations are not the same amounts.  This Court has considered and rejected this argument on numerous occasions.  *See Long v. Shelter Ins. Cos.*, 351 S.W.3d 692 (Mo. App. W.D. 2011).  And, subsequently, we cited extensively to *Long* and stated in *Wasson v. Shelter Mut. Ins. Co.*, 358 S.W.3d 113, 120-21 (Mo. App. W.D. 2011):

> If the ordinary insured looks at the top right corner of the endorsement, it states "Limits of Liability."  Beneath that reference there are no numbers and the "per person/per accident" amounts are left blank.  Immediately below this, however, the ordinary insured will see that the endorsement states: "(This Coverage applies only when the endorsement number and limits of liability are stated in the **Declarations**.)"  The ordinary insured will thus know that the limits of liability will be stated in the "Declarations." . . . .
>
> . . . .
>
> [T]he declarations page 'tells the ordinary insured the UIM 'coverage' is [in the *Long* case] $100,000 per person/$300,000 per accident."
>
> . . . .
>
> Courts are not to interpret the provisions of an insurance policy in isolation but rather are to examine the policy as a whole.  In this case [the *Wasson* case], the Declarations page indicates that the endorsement number pertaining to UIM coverage [has] limits of $250,000 per person, $500,000 per accident.  The endorsement page does nothing to change that perception.  'While ambiguity exists if the term is '*reasonably* open to different constructions,' . . . an *unreasonable* alternative construction will not render the term ambiguous.  Courts will not distort the language of an unambiguous insurance policy in order [to] create an ambiguity where none exists.  Moreover, seeming contradictions in an insurance policy must be harmonized if reasonably possible.
>
> Here, the policy's Declarations page, UIM endorsement, and the table at the top of the endorsement page would have been understood by an ordinary person of average understanding to provide limits of liability for UIM coverage of $250,000 per person, $500,000 per accident.  The trial court erred in declaring the provision ambiguous . . .

7

(citations omitted).

Applying *Wasson* here, it is evident that the "Per Person" UIM limit listed in the Declarations and the "Each Person" limit referred to in the UIM endorsement are the same. The UIM Endorsement defines the words "each person limit" as "the amount shown on this endorsement and in the **Declarations** as such." An ordinary person of average understanding would conclude from this sentence that, if the UIM Endorsement limits are blank, the limits of liability will be stated in the Declarations.

Additional language in the UIM Endorsement also refers the reader to the Declarations. Immediately below the blank limits appears the sentence, "this [UIM] coverage is provided only if the endorsement number is shown in the **Declarations**." Reading the Declarations, only one line mentions the UIM Endorsement and lists the number referred to in that endorsement (A-735.6-A). The UIM Endorsement line clearly lists the "Limits and Deductibles" as $50,000 per person and $100,000 per accident:

| Coverages | Limits and Deductibles | Endorsement Number |
|---|---|---|
| A. Bodily Injury | $100,000 Each Person   $300 Each Accident | |
| B. Property Damage | $100,000 Each Accident | |
| C. Medical Payments | $5,000 Each Person | |
| E. Uninsured Motorists | $50,000 Each Person   $100,000 Each Accident | |
| F. Collision | $500 Deductible | |
| G. Comprehensive | $500 Deductible | |
| Underinsured Motorist Endorsement | $50,000 Per Person   $100,000 Per Accident | A-735.6-A |
| Roadside Assistance | $100 Limit | A-151.2-A |

8

Given that there is no other mention of UIM benefits in the Declarations, an ordinary person of average understanding would conclude that the "Each Person" limit for UIM coverage referred to in the UIM Endorsement is $50,000. *See Wasson*, 358 S.W.3d at 121. Thus, the "Each Person" limit for UIM coverage is unambiguously equal to $50,000.

McCarty next successfully argued to the circuit court that if the UIM limit is indeed $50,000 as specified in the Declarations, then Shelter must pay the full $50,000 UIM policy limit because the Declarations do not alert the reader to any potential reductions or set-offs. McCarty further contends that the UIM Endorsement language stating that "THIS COVERAGE WILL SUPPLEMENT THE PAYMENTS . . . UP TO THE LIMITS YOU PURCHASED FOR THIS COVERAGE" is an express promise to pay the full UIM policy limit. Essentially, McCarty takes the position that the Policy is ambiguous because it promises to pay up to the UIM limits, but "the setoff provisions in the definition of 'applicable limit' ensure Appellant will never be obligated to pay that amount." Again, we disagree.

It is well-established that declarations in an insurance policy "are introductory only and subject to refinement and definition in the body of the policy." *Owners*, 514 S.W.3d at 617. The top of the UIM Endorsement alerts the reader immediately that any UIM benefits will be reduced to the "applicable limit" by deducting payments received by the insured from other sources:

Limits
$_____ Each Person $_____ Each Accident $_____

9

NOTE: these amounts will be reduced to the **applicable limit** by deducting the payments an **insured** received, or is legally entitled to receive under an enforceable settlement contract or judgment, from other sources (as stated in the definition of **applicable limit**).

The definition of "applicable limit" further puts the reader on notice of a potential set-off.   The term "applicable limit" is defined in the Policy as "[t]he each person limit **minus** the total amount paid, or payable, to an insured by all payment sources . . ." (emphasis added).  The "applicable limit" in this case equals the "each person" limit ($50,000) **minus** the total amount paid to McCarty from all payment sources ($35,000), amounts to $15,000.

And, though McCarty has accurately quoted *part* of the "supplemental" language provision in the Policy, she ignores the language immediately after that *part* that further defines how the "supplement" coverage will operate.  Not so coincidentally, that language mirrors other set-off language that has already been itemized herein, and it unambiguously delineates that a payment from a tortfeasor will reduce the UIM coverage limit, to-wit:

> THIS COVERAGE WILL SUPPLEMENT THE PAYMENTS FROM THOSE **PAYMENT SOURCES** UP TO THE LIMITS YOU PURCHASED FOR THIS COVERAGE. BUT THE FULL AMOUNT OF THE LIMITS **YOU** PURCHASED WILL BE PAID ONLY WHEN ALL **PAYMENT SOURCES** WERE EXHAUSTED WITHOUT ANY PAYMENT TO AN **INSURED**.

Similar language was found unambiguous by the Missouri Supreme Court in *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379 (Mo. banc 1991).  In *Rodriguez*, the insurance contract at issue provided that "the limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who

10

may be legally responsible." *Id*. at 381. The appellants had $50,000 in UIM coverage, and the limits of liability for the at-fault vehicle was $50,000. *Id*. at 380. The appellants received $50,000 from the at-fault vehicle's insurance carrier and were, consequently, denied any UIM coverage from their own insurance carrier pursuant to the contractual language of that insurance policy. *Id*. On appeal, the appellants claimed that the UIM coverage language was ambiguous and sought to recover the full $50,000 limit of their UIM coverage despite the previous $50,000 payment from the tortfeasor's liability insurance policy. *Id*. at 381. In rejecting the claim, the Missouri Supreme Court explained:

> The underinsured motorist coverage [at issue] . . . is not excess coverage as the Rodriguezes' argue. Instead, that coverage provides a total amount of protection to be paid to the Rodriguezes if other persons legally responsible for Mrs. Rodriguez' injuries have lesser liability limits than those provided under the Rodriguezes' underinsured motorist coverage.

*Id*. at 382.

The same is true of the Policy language at issue. The Policy repeatedly states that it will provide "supplemental," not excess, coverage less liability payments received from the tortfeasor by paying the difference between those payments and the UIM limit of $50,000 per person. The Policy essentially takes a form that has been widely recognized as enforceable in Missouri:

> A policy that plainly states it only will pay the difference between the amount recovered from the underinsured motorist and the [declarations' listed limit amount] is enforceable. In such a case, the mere fact that [the declarations' listed limit amount] will never be paid out is not misleading, for the Policy never suggests that this is its liability limit and never implies that it may pay out that amount.

11

*Owners*, 514 S.W.3d at 617 (alteration in original) (quoting *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 141 n.10 (Mo. banc 2009); *see also Johnson v. Am. Fam. Mut. Ins. Co., S.I.*, 694 S.W.3d 529, 534 (Mo. App. W.D. 2024) (noting that, with regard to UIM coverage, every relevant section of the policy plainly states that it will pay only the difference between the listed declaration policy limit and payments to its insured arising from the injury-producing occurrence from any other payment sources specified in the endorsement and, thus, concluding that the UIM set-off language is unambiguous and enforceable).

McCarty attempts to avoid this conclusion by citing to *Jones v. Mid-Century Ins. Co.,* but *Jones* is inapposite because, plainly, it is not the same insurance policy as the one presently before us. The *Jones* policy did not have similar definitional provisions that notified the reader of UIM exclusions or set-offs. Rather the *Jones* policy contained a provision that promised to "*pay* up to the limits of liability" shown in its UIM declarations without further qualification. 287 S.W.3d at 690-91 (emphasis added). The Missouri Supreme Court ruled that this promise was in conflict with another provision stating that the UIM coverage would be reduced by payments made by a legally responsible party, which made payment of the full limit of liability impossible because the insurance of the underinsured tortfeasor would always provide the insured some payment. *Id*. at 691. Here, however, no such conflict is present. Every relevant provision of the UIM Endorsement advises that the $50,000 "Each Person" limit is subject to reduction by payment from the tortfeasor.

12

Finally, McCarty submits that section 379.204[4] requires a minimum of $50,000 in UIM coverage and that coverage limits less than $50,000 must be construed as providing "excess" rather than "gap" coverage.

That statute provides:

> Any underinsured motor vehicle coverage with limits of liability less than two times the limits for bodily injury or death pursuant to section 303.020 shall be construed to provide coverage in excess of the liability coverage of any underinsured motor vehicle involved in the accident.

§ 379.204.

Section 303.020 sets a mandated statutory limit of $25,000 for bodily injury or death coverage. Therefore, Shelter's Policy was required to provide a minimum UIM coverage liability limit of $50,000 (twice the statutory minimum liability limit) to comply with section 379.204, though nothing in section 379.204 prohibits a UIM set-off provision. The purpose of section 379.204 is to "help protect the insurance consumer from purchasing 'illusory' coverage." *Miller v. Ho Kun Yun*, 400 S.W.3d 779, 791 (Mo. App. W.D. 2013). In this case, Shelter's UIM limit was *not* less than $50,000, so the UIM coverage is not "illusory" and section 379.204 is not triggered to compel McCarty's argument that the entire $50,000 of UIM coverage under the Policy must be considered excess coverage to those amounts already paid to McCarty by the tortfeasor's insurance carrier.

---

[4] All statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through July 16, 2021, unless otherwise indicated.

In sum, the trial court erred in granting McCarty's motion for summary judgment and in denying Shelter's motion for summary judgment. Shelter's points on appeal are granted.

## Conclusion

The trial court's judgment is reversed. The case is remanded for the trial court to grant Shelter's motion for summary judgment and to enter judgment in favor of Shelter declaring that $15,000 of UIM coverage benefits is the contractual obligation of Shelter to McCarty pursuant to the terms of the Policy.

_____
Mark D. Pfeiffer, Presiding Judge

Gary D. Witt and Thomas N. Chapman, Judges, concur.